**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NIKKOLE MAREE MILLER, | : | |
|     **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2181** |
| | : | |
| OLIVER LAROCCO, *et al.*, | : | |
|     **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**GALLAGHER, J.**                                                                                                **JUNE 1, 2026**

Plaintiff Nikkole Maree Miller, an inmate at SCI Muncy,[1] filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, naming as Defendants Northampton County Jail, and corrections officers Oliver LaRocco, Amanda Rosario-Ayala, and L. Jennings.  (Compl. (ECF No. 2) at 2-3.)  Miller filed a motion to proceed *in forma pauperis* (ECF Nos. 1 and 4), which the Court previously granted.[2]  Presently before the Court is a Motion to Dismiss the Complaint filed by Defendants LaRocco and Rosario-Ayala (ECF No. 17), along with Miller's Response to the Motion (ECF No. 22).  For the following reasons, the Court will grant the Motion to Dismiss in part and deny it in part.  The case will proceed against LaRocco and Rosario-Ayala, and Miller will be given the option of amending her complaint.

---

[1] Miller alleges that the events in the Complaint occurred while she was incarcerated as a pretrial detainee at Northampton County Jail.  She was moved to SCI Muncy after she filed this Complaint.

[2] Miller also filed a Motion to Appoint Counsel (ECF No. 3) and the Court granted it in part insofar as it referred the matter to the Prisoner Civil Rights Panel for the Eastern District of Pennsylvania, (*see* ECF No. 6).  No attorney has volunteered to accept the case.  As Miller was previously advised, she has no legal right to an attorney in this civil action.  *See id.*

I.      **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**[3]

On or around August 23, 2023, Miller was arrested on criminal charges and held as a pretrial detainee at the Northampton County Jail.[4] (Compl. at 6.) During intake to the jail, she allegedly told the nursing staff that she would be detoxing from fentanyl and methamphetamine. (*Id*.) "Sometime during [her] first day," Miller's mental health deteriorated "at a substantially fast pace." (*Id*.) While she was housed in cell #08, she kicked the bottom of her bunk for 70 consecutive hours and complained about another person in her cell not "shutting up," even though she was not housed with anyone else. (*Id*.) She yelled things she cannot remember. (*Id*.) Defendant LaRocco apparently made several calls about how to handle the situation, and he issued a misconduct to Miller, although Miller alleges she should have been put on a "level" (suicide observation). (*Id*. at 4, 6.)

On August 26, 2025, the day after the interaction with LaRocco, Miller attempted suicide. (*Id*. at 4-5.) Miller asserts that Defendants Jennings and Rosario-Ayara were supposed to perform security rounds that morning, but they "didn't want to deal" with Miller. (*Id.* at 6.) Miller asserts that "it was later proven that they were fabricating the times and actually not doing" their rounds. (*Id*.) During an alleged hour and twenty-minute period without any security patrols of her unit, Miller hung herself. (*Id.*) The runner for the unit, inmate J. Gill,

---

[3] The factual allegations set forth in this Memorandum are taken from Miller's form Complaint. (ECF No. 2.) The Court deems the entire submission to constitute the Complaint ("Compl.") and adopts the pagination supplied by the CM/ECF docketing system. Publicly available records have also been consulted in this screening under § 1915(e)(2)(B). *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[4] Miller states that she was held in connection with Case Nos. CR-48-0002354-2023 (C.P. Northampton) and CR-48-0002432-2023 (C.P. Northampton) in Northampton County Court of Common Pleas. According to publicly-available state court dockets, she pleaded guilty to the charges in June 2025.

noticed that Miller was not responsive.  (*Id.*)  Miller coded and had to be revived after Lieutenant

Chewblowski cut her down.  (*Id.* at 4, 6.)

Officers Francis and Vaughn, who wore body cameras, took Miller to the hospital.  (*Id.* at

6.)  Miller alleges that LaRocco told Francis and Vaughn that Miller was "vying for attention."

(*Id.*)  Miller claims that, on the way to the hospital, she "was not in a stable mental state" and

banged her head on the partition in the vehicle until she knocked herself out.  (*Id.*)  When she

returned to Northampton County Jail, she was placed on suicide observation from August 26

until the 28, and then put on "Level 2" from August 29 through 31, September 1 through October

2, and November 5 through 15.  (*Id.*)

On her civil rights complaint form, Miller checked the box indicating that she filed a

grievance at Northampton County Jail concerning the facts she alleges in her Complaint.  (*Id.* at

8.)  She states that she argued "that the officers displayed deliberate indifference to protocol or

procedure."  (*Id.*)  Miller reports that her grievance was found "non grievable".  (*Id.*)  In response

to a question on the form regarding her efforts to appeal, she responded that she "had to request a

grievance for this incident 7 times before I was actually issued it, and I didn't want the backlash

of trying to appeal the situation.  Most grievances here are looked over or labeled no[n]

grievable."  (*Id.*)

Miller's civil complaint pursuant to 42 U.S.C. § 1983 raises claims for deliberate

indifference under the Eighth Amendment and liability under *Monell v. N.Y.C. Dept. of Soc.*

*Servs.*, 436 U.S. 658 (1978).  (*Id.* at 3.)  She claims that, as a result of the events alleged in the

Complaint, she suffers from mental anguish and severe anxiety, and has been diagnosed with

severe Post-Traumatic Stress Disorder involving "sally ports" and close quarters.  (*Id.* at 5.)

Miller has panic attacks, takes psychological medications, and sees a psychologist.  (*Id.*)  She

brings claims for monetary and injunctive relief against LaRocco, Jennings, Rosario-Ayala, and Northampton County Jail.[5]  (*Id*. at 5.)

In an Order entered on June 6, 2025, the Court granted Miller's motion to proceed *in forma pauperis*, dismissed the claims against Northampton County Jail, and directed that the United States Marshal Service effect service on LaRocco, Rosario-Ayala, and Jennings in accordance with 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).  (*See* ECF No. 6.)   In September 2025, the U.S. Marshal successfully served LaRocco and Rosario-Ayala, but the Process Receipt and Return Form USM-285 for Jennings was returned unexecuted.[6]  (ECF No. 13 at 1-3.)

LaRocco and Rosario-Ayara filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for lack of exhaustion and failure to state a deliberate indifference claim or a claim pursuant to *Monell*.  (ECF No. 17.)  The Court ordered Miller to file a response and directed Miller to provide a new address for Jennings.  (ECF Nos. 18 and 19.) After Miller failed to respond to the Motion to Dismiss within the time allotted or to send a new address for Jennings, the Court issued an order for her to show cause why the case should not be dismissed.  (ECF No. 21.)  Miller filed a "Brief in Support to Continue Lawsuit" in January 2026, in which she opposed LaRocco's and Rosario-Ayala's Motion to Dismiss and addressed

---

[5] In light of Miller's transfer to SCI Muncy, her requests for injunctive relief are moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.") (citing *Abdul-Akbar v. Watson,* 4 F.3d 195, 197 (3d Cir. 1993)).

[6] The "Remarks" section on the return designated for U.S. Marshals contains the notation: "Return unex: unable to locate, no longer employed by the County of Northampton, no forwarding address provided."  (ECF No. 13 at 3.)

her inability to provide a new address at which to serve Jennings.[7]  (ECF No. 22.)  Miller

countered the Defendants' argument that she had not exhausted administrative remedies by

alleging that she attempted to exhaust but the process was made unavailable to her.  (*Id*. at 2.)

She also argued that she had stated a claim for deliberate indifference.  (*Id*. at 1-2.)

## II.    STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint."

*Peters v. Brown,* 793 F. App'x 118, 123 (3d Cir. 2019) (*per curiam*) (quoting *Kost v.*

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotations omitted).  In deciding a motion

to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

(citing *Twombly*, 550 U.S. at 555).  "Although the plausibility standard does not impose a

probability requirement, it does require a pleading to show more than a sheer possibility that a

defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir.

2016) (internal quotation marks and citations omitted).

---

[7] On the failure of service on Jennings, Miller explained that she was at a "standstill" on how to proceed because, as an inmate, she is "unable to obtain any real/actual information about said Defendant.  Also, being a government employee, the jail <u>refuses</u> to release even the most minute details regarding the Defendant (i.e. First Name, Badge Number, ect. [sic]) to include[] pertinent information, such as: [t]he address to her place of residence so I may have her properly served."  (ECF No. 22 at 1.)

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) (*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024)). Because Miller is proceeding *pro se*, the Court construes her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)*; see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (same). The Court may also take judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.") (collecting cases). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

## III.    DISCUSSION

Miller brings her claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim

under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A.      Exhaustion

The Moving Defendants argue that Miller failed to exhaust available administrative remedies. Prisoners seeking to challenge the conditions of their confinement are subject to the Prison Litigation Reform Act ("PLRA"), which mandates exhaustion of all available administrative remedies before bringing a lawsuit. 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense that a defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Accordingly, because a plaintiff "need not anticipate or overcome affirmative defenses" such as exhaustion, *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014), it is generally not an issue for statutory screening, *Jones*, 549 U.S. at 216; *see also Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024) ("The Supreme Court has explained that the ordinary pleading rule—that a plaintiff need not plead the absence of an affirmative defense or otherwise plead around it— applies in the PLRA context."). However, "where a prisoner's failure to exhaust under the PLRA is 'apparent from the face of the complaint,' a district court may dismiss it on that basis." *Talley*, 111 F.4th at 264 (quoting *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002)).

Miller states in her Complaint that she filed a grievance at Northampton County Jail alleging that officers had been deliberately indifferent, and that it was found by prison officials to be "non grievable." (Compl. at 8.) She further contends that she had to request a grievance seven times before she was issued one "and [she] didn't want the backlash of trying to appeal the

7

situation.  Most grievances here are looked over or labeled no [sic] grievable."  (*Id*.)  The

Moving Defendants argue that Miller's statement about appeal constitutes an admission that she

failed to exhaust, and that dismissal is appropriate because the lack of exhaustion is "clear from

the face of the Complaint."  (ECF No. 17-1 at 5.)  However, in her Rule 12 Response, Miller

maintains that she did not fail to exhaust, but "was not allowed to exhaust."  (ECF No. 22 at 2.)

She explains that she did not "ever say that I never attempted [to exhaust].  I have a list of

recorded times, dates, and names of the Northampton County Prison staff members that I

repeatedly asked for grievances as well as appeal papers and were denied . . . ."  (*Id*.)  Miller

explains that Northampton's policy requires that an inmate obtain permission "through an LT"

(presumably, a lieutenant) for the paperwork.  (*Id*.)  Miller states that she was refused so much

that she began keeping track of "when, and by whom," and that she attempted to go to the

counselors but was denied "numerous times."  (*Id*.)  She claims that she also reported the lack of

access to process to the Prison Society.  (*Id.*)

 "Although the availability of administrative remedies to a prisoner is a question of law, it

necessarily involves a factual inquiry."  *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir.

2013) (citations omitted).  Here, Miller has raised sufficient questions concerning the availability

of administrative remedies such that it is not appropriate for the Court to dismiss her claims at

this time.  *See Washington v. Link*, 750 F. App'x 84, 88 (3d Cir. 2018) (*per curiam*)

(disapproving of the district court's fact-finding on exhaustion at the 12(b)(6) stage).  At a

minimum, it is not sufficiently clear *from the face of the Complaint* that she did not exhaust

*available* administrative remedies.  Miller's statement in the Complaint that she "didn't want the

backlash of trying to appeal the situation.  Most grievances here are looked over or labeled no

[sic] grievable," (*see* Compl. at 8), appears to confirm that she did not complete her appeal, but it

is less than clear whether the procedures were indeed "available." In her Complaint, Miller alleges that corrections officials' response to her first grievance was that her issues were "non grievable," which, if true, could be construed to convey that the grievance procedures are not available for those particular issues. In any event, Miller denies that she "never attempted" an appeal, and she maintains that she "repeatedly asked" for grievances as well as appeal papers and was denied. (ECF No. 22 at 2.) When prison officials refuse to provide grievance forms in response to inmate requests or advise an inmate that their situation does not require a grievance, administrative remedies may be rendered unavailable. *See Carter v. Thomas*, No. 12-1955, 2014 WL 4792600, at *9 (M.D. Pa. Sept. 23, 2014) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (reversing dismissal on exhaustion grounds where prisoner alleged the prison officials refused to provide necessary grievance forms); and then *Brown v. Cook*, 312 F.3d 109, 111-12 (3d Cir. 2002) (reversing summary judgment granted on exhaustion issue in prison officials' favor where plaintiff alleged that prison officials led him to believe that he was required to wait until the conclusion of an investigation before filing grievance)). The further explanation that she did not want "the backlash" of an appeal is unclear, and, to the extent that this is a vague reference to retaliation or intimidation, those types of actions could render administrative remedies unavailable. *See id.* (describing actions by prison staff that can make remedies unavailable including "threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust") (citing *Harcum v. Shaffer,* No. 06–5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov.21, 2007)).

In ruling on a Rule 12(b) motion, the Court must accept plausible allegations made by the plaintiff. *See Shorter*, 12 F.4th at 174. Miller has plausibly raised issues concerning the availability of remedies. And, because of the factual issues at hand, it would be premature to

conclusively rule on the issue. *See Washington*, 750 F. App'x at 88. Accordingly, the Court will deny the motion to dismiss the Complaint on failure to exhaust grounds.

### B.    Claims for Deliberate Indifference

#### 1.    Pretrial Detainee Claims Under the Fourteenth Amendment

The Moving Defendants argue that Miller has failed to plead plausible claims of deliberate indifference to a medical need, and that the claims should be dismissed. (ECF No. 17-1 at 6-7.) First, they argue that Miller's claim for deliberate indifference fails because she has alleged it under the Eighth Amendment, which applies to convicted and sentenced prisoners, but her claims arose while she was a pretrial detainee. (*Id*. at 6.) As the Moving Defendants should be aware, however, Miller is a *pro se* litigant, and the Court must liberally construe her Complaint. *Vogt*, 8 F.4th at 185 (citing *Mala*, 704 F.3d at 244-45). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). As a pretrial detainee, the Fourteenth Amendment would govern her constitutional claims for deliberate indifference to a serious medical need. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005); *see also Woloszyn v. City of Lawrence*, 396 F.3d 314, 318 n.5 (3d Cir. 2005) (determining that inmate suicides occurring before sentencing are analyzed under the Fourteenth Amendment). Moreover, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs, including vulnerability to suicide, is essentially the same for purposes of the analysis, so the Defendants' argument is misguided on this point as well. *See Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care). The Motion to Dismiss is denied on that ground.

10

### 2.    Deliberate Indifference to a Particular Vulnerability to Suicide

The Moving Defendants also argue that Miller has failed to plead sufficient facts alleging that LaRocco and Rosario-Ayala were aware of a serious medical need and acted with deliberate indifference.  (ECF No. 17-1 at 6.)  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  The Moving Defendants address their argument specifically to the "particular vulnerability to suicide" as the type of "serious medical need."  *Palakovic*, 854 F.3d at 222 (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).  To hold a corrections officer liable in such cases, a plaintiff must show: "(1) that the individual had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability."  *Palakovic*, 854 F.3d at 223–24 (footnote omitted); *see also DeJesus v. Delaware through Del. Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020) (noting that a claim for deliberate indifference to serious medical need is distinct from "a vulnerability to suicide claim[, which] focuses more narrowly on evidence showing a strong likelihood of suicide" (citing *Palakovic*, 854 F.3d at 223-24, 227)); *Joines v. Township of Ridley*, 229 F. App'x 161, 162 (3d Cir. 2007) (applying "particular vulnerability to suicide" rubric to attempted suicide).  When assessing an inmate's particular vulnerability, the "strong likelihood" that an inmate will harm herself must be "so obvious that a lay person would easily recognize the necessity for preventative action."  *Bingham v. Lancaster County*, 709 F. Supp. 3d 176, 185 (E.D. Pa. 2024)

11

(internal quotation marks omitted). The Court considers whether an inmate exhibited a particular vulnerability to suicide on the "totality of the facts presented." *Id*. (quoting *Palakovic*, 854 F.3d at 230).

LaRocco and Rosario-Ayala argue that Miller's allegations that she told nurses about her withdrawal from drugs and that her mental health "deteriorated at some point" are "not sufficient to establish a particular vulnerability [to suicide]." (ECF No. 17-1 at 7.) Miller alleges in her Complaint that, "upon entering intake," at Northampton, she told the nursing staff that she would be detoxing off of fentanyl and methamphetamine. (Compl. at 6.) The increased risk of suicide an inmate may experience while detoxifying from alcohol or drugs does not by itself demonstrate a particular vulnerability to suicide sufficient for a deliberate indifference claim, however. *See Caroll v. Lancaster County*, 301 F. Supp. 3d 486, 497 (E.D. Pa. 2018) (stating that the Court of Appeals for the Third Circuit "has clearly and repeatedly held that the increased risk of suicide due to intoxication or drug withdrawal cannot support a deliberate indifference claim," and citing cases). But drug withdrawal plus the expression of an intent to do harm, or the placement of an inmate in a suicide watch due to past drug abuse, may suffice to allege a particular vulnerability to suicide at the motion to dismiss stage. *See DeJesus v. Delaware*, 210 F. Supp. 3d 620, 625 (D. Del. 2016) ("In this case, decedent's recent withdrawal treatment in addition to his indications to multiple officers that he intended to injure himself is sufficient to plausibly demonstrate his particular vulnerability to suicide."); *McAndrew v. Northumberland County*, No. 22-834, 2023 WL 5351994, at *4 (M.D. Pa. Aug. 21, 2023) (concluding that plaintiff's decedent had a particular vulnerability to suicide where inmate was placed on suicide watch at the jail because she was a known drug user). In Miller's case, she alleges that nurses knew of her withdrawal, and that she spent nearly three straight days kicking the bottom of a bunk and complaining about

another individual in the room when she was, in fact, alone.  (Compl. at 6.)  This alleged behavior, while very alarming, does not necessarily indicate *suicidal* behavior.  Standing alone, it does not appear to suggest a "strong likelihood" of suicide to a layperson such as a correctional officer.  In addition, Miller does not allege in her Complaint that LaRocco or Rosario-Ayala knew or should have known that she was particularly vulnerable to suicide.  At the pleading stage, the Court liberally construes Miller's Complaint and assumes the veracity of all well-pleaded facts.[8]  *Dade v. Gaudenzia DRC, Inc.*, 2013 WL 3380592, at *2 & n.1 (E.D. Pa. Jul. 8, 2013).  Even so, the allegations as presently pleaded in Miller's Complaint do not "raise a reasonable expectation that discovery will reveal evidence of the necessary element," *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009), namely, that "there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted," *Palakovic*, 854 F.3d at 223–24, nor does the Complaint allege that LaRocco or Rosario-Ayala knew or should

---

[8] Miller alleges several relevant additional facts pertaining to this claim in her Rule 12 Motion Response.  Miller claims that her Intake Screening reflects that she admitted to having three very serious suicide attempts within the past four years, and she also contends that the prison did not follow proper Department of Corrections policy of placing inmates detoxing from drugs on suicide watch.  (ECF No. 22 at 1-2.)  Further, Miller states that she has been incarcerated ten times at the Northampton County Jail since 2010 and thus is known (and, she suggests, her background of substance abuse and suicide attempts would have been known) by LaRocco.  (*Id*. at 2.)  These facts are not alleged in her Complaint.

On review for the motion to dismiss, the Court must refrain from considering additional factual allegations that are not part of the Complaint.  *Dade v. Gaudenzia DRC, Inc.*, 2013 WL 3380592, at *2 n.1 (E.D. Pa. Jul. 8, 2013) (noting the preference of district courts in this Circuit to decline to consider factual allegations made in responses to motions to dismiss); *Hanna v. Menges*, No. 21-3812, 2024 WL 1321057, at *4 (E.D. Pa. Mar. 27, 2024) ("[I]t is well-established that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").  "[I]f a court determines that a plaintiff has failed to state a claim, the plaintiff can incorporate allegations from the response—along with other pertinent factual matter and exhibits—into an amended complaint." *Dade*, 2013 WL 3380592, at *2 n.1.  Miller will accordingly be given leave to amend her Complaint to attempt to cure the defects with her vulnerability to suicide claims, if she wishes.

have known of a strong likelihood of suicide, *see id.*  The Court will dismiss the particular

vulnerability to suicide claims against LaRocco and Rosario-Ayala without prejudice.

### 3.    Deliberate Indifference to a Serious Medical Need

"[A] vulnerability to suicide is not the sole need on which [a] claim [can be] focused."

*DeJesus*, 833 F. App'x at 940 (quoting *Palakovic*, 854 F.3d at 227).  That is, Miller's allegations

may be read to allege a claim that Defendants were deliberately indifferent to her serious medical

need of withdrawing from drugs and/or the need for mental health treatment.  For this claim, a

plaintiff must allege: "(1) he had a serious medical need, (2) defendants were deliberately

indifferent to that need, and (3) the deliberate indifference caused harm or physical injury to the

plaintiff."[9]  *Id.*

The Moving Defendants do not attempt to dismiss the Complaint with respect to this

basis for Miller's deliberate indifference claims.  The Court concludes that Miller plausibly

alleges a Fourteenth Amendment claim that may proceed under that standard.  Miller claims that

---

[9] "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up).  "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).  Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted).  This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026).  "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic*, 854 F.3d at 227).

14

she told intake personnel that she was detoxing from fentanyl and methamphetamine but was left in a cell by herself where she kicked her metal bunk for nearly three days straight and complained about a non-existent roommate. "Instead of putting [her] on a level (suicide watch), D. LaRocco decided to issue [ ] a misconduct." (Compl. at 4.) Miller further avers that Rosario-Ayala and Jennings "didn't want to deal" with her and did not perform their rounds as they were supposed to, which provided the opportunity for her to attempt suicide by hanging herself. (*Id.* at 6.) LaRocco allegedly told the officers transporting Miller to the hospital that she was "vying for attention," and, according to Miller, her mental state remained unstable while being transported after that, such that she banged her head until she knocked herself out. (*Id.*) Miller's Fourteenth Amendment claims based on the deliberate indifference to a medical need will proceed against the Defendants. *Palakovic*, 854 F.3d at 229, 234 (remanding on previously dismissed deliberate indifference to a serious medical need claim where plaintiffs had stated claim that deficient mental health treatment fell below constitutional standards and defendants were deliberately indifferent to inmate's serious medical needs).

### C.    *Monell* Claim

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480

15

(3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by alleging a failure-to-supervise, train, or discipline. *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  To allege a *Monell* claim based on a failure to train, a plaintiff must "show[ ] that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Redclift v. Schuylkill County*, No. 21-1866, 2022 WL 3973819, at *9 (M.D. Pa. Aug. 31, 2022) (quoting *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014)).  Further, the deficiency identified in a municipality's training must be "closely related to the ultimate injury," that is, "the deficiency in training [must have] actually caused the constitutional violation." *Id.* (quotation marks and citation omitted).

The Moving Defendants note that Miller has attempted to bring a claim pursuant to *Monell*, but that she has only named individual defendants remaining in the lawsuit and not a municipality.  (ECF No. 17-1 at 7.)  However, Miller has checked the boxes indicating that she is suing the Defendants in their individual and official capacities.  (Compl. at 2-3.)  Claims alleged against municipal officials named in their official capacity are indistinguishable from claims against the municipality.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of

which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* However, since the Complaint does not allege that the events at issue here resulted from a municipal policy or custom or deliberate indifference attributable to the municipality, the Court will dismiss this claim.

Miller will be granted leave to amend her *Monell* claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the Moving Defendants' Motion to Dismiss in part and deny it in part. The Motion is granted insofar as the Court will dismiss the Fourteenth Amendment deliberate indifference to a particular vulnerability to suicide claims alleged against LaRocco and Rosario-Ayala for failure to state a claim. The *Monell* claim will likewise be dismissed for failure to state a claim. The Motion will otherwise be denied. The claims against LaRocco and Rosario-Ayala for deliberate indifference to a serious medical need will be allowed to proceed at this time.[10]

---

[10] As noted above, the U.S. Marshal attempted to serve L. Jennings at Northampton County Jail, but the return indicates that she is no longer employed by the County, and "no forwarding address [was] provided." (*See* ECF No. 13 at 3.) When a plaintiff who is proceeding *in forma pauperis* "is suing a current or former government employee who played some role in his or her incarceration" and there are understandable concerns with disclosure of those government officials' addresses, "§ 1915(d) requires USMS to take reasonable steps to assist," provided that the plaintiff "can adequately identify a defendant but not locate them." *Freeman v. Lincalis*, 158 F.4th 166, 180 (3d Cir. 2025) (adopting approach of sister circuit courts); *see also Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010) ("It is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison. Thus, we conclude that, as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes."); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) ("If the Marshals Service could have obtained the new addresses of the defendants with reasonable efforts, the marshals' failure to serve process was 'good cause' for purposes of Rule 4(m)."). A

Miller will be given the option of proceeding on the remaining deliberate indifference claims or filing an amended complaint. An appropriate Order accompanies this Memorandum, which provides further guidance for proceeding.

BY THE COURT:


*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**

---

court should extend the time for service, rather than dismiss, "after a plaintiff furnishes identifying information," if the U.S. Marshals are unable to locate the identified defendant. *See Freeman*, 158 F.4th at 180.

The Court is aware of the service obligations under *Freeman* and § 1915(d), and it expects that, as this case moves into the discovery phase, additional information as to the last known address of Jennings and/or other information to assist in service will be made available. The Court finds that there is good cause under Rule 4(m) to extend the time for service on Jennings through the discovery phase so that additional efforts to locate Jennings may be undertaken.